FILED - GR
May 1, 2019 9:33 AM
CLERK OF COURT
U.S. DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
BY: kw  Scanned

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH BRUNEAU

 Plaintiff,

v.

CITY OF HILLSDALE, STEVE PRATT,
BRADLEY MARTIN, SHELBY RATHBUN,
DUSTIN ZIMMERMAN, and COREY DOW,
in their individual and official capacities

 Defendants.

CASE NO: 1:18-CV-598

HON: GORDON J. QUIST

*PLAINTIFF NOT OPPOSED TO DEFENSE REQUEST FOR ORAL ARGUMENT, IF GRANTED TO DEFENSE, PLAINTIFF REQUESTS IT AS WELL*

---

JOSEPH BRUNEAU, in pro per
5020 Carson Ave. SW
Grand Rapids, MI 49548
616-238-8558

ROGER A. SMITH P27722
Vandeveer Garzia, P.C.
Counsel for Defendants
840 W. Long Lake Road, Suite 600
Troy, MI 48098
248-312-2955 Fax 248-312-2800
rsmith@vgplaw.com

---

# PLAINTIFF'S BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS AND/OR FOR SUMMARY JUDGEMENT BASED ON STATUTES OF LIMITATION

## TABLE OF CONTENTS

ISSUES PRESENTED ........................................................... iii

I. Introduction ………………………...………………….. 1

II. THE ISSUE OF INSANITY…………………………….. 2

III. SPECIFICS OF THIS MATTER……………………….. 3

IV. Conclusion and Request for Relief ................................... 5

## ISSUE PRESENTED

Are Plaintiff's claims barred by the Michigan statutes of limitations?

    Plaintiff says "**No**"

    Defendants say "**Yes**"

## I. INTRODUCTION

This case arrises from a Defendant's alleged act of using a Taser device on Plaintiff multiple times while he was securely restrained to a gurney in the ER Department of Hillsdale Hospital on September 4, 2014.

Often, suspects are told by police in instances where they are about to be searched, or interviewed (interrogated) that: "if you've done nothing wrong, then you have nothing to fear." Defendant police officers have asserted through their Chief, and again through Defense Counsel (in their Answer to First Amended Complaint) that they did not in fact use a Taser on the Plaintiff at all. Yet they flinch at the opportunity to allow this same standard of "if you've done nothing wrong, then you have nothing to fear" to apply to their own actions by asserting Plaintiff's claim should be barred because it was filed 8 months after the statute of limitations had passed, and that the tolling provision of MCL 600.5851 should not apply. In fact, their Defense has filed a 31 page brief in support of a motion to dismiss Plaintiff's claim of alleged actions that Defendants claim they never even carried out.

Plaintiff asserts the insanity tolling provision of MCL 600.5851 should apply because at the time of the offense and for nearly 3 years thereafter, Plaintiff met the tolling provision's standard of insanity in that he was not functioning at a sufficient level of mental capacity to comprehend his legal rights pertaining to this matter and to act on them appropriately. Plaintiff's Psychiatrist, Dr. Mark Filipczuk has affirmed this in his letter of June 27, 2018, which has been filed with the Court along with Plaintiff's First Amended Complaint.

Dr. Filipczuk has indicated that he is willing to discuss the matter with the Court by means of telephone conference. This could take place during a hearing of oral arguments.

## II. THE ISSUE OF INSANITY

At issue is the concept of insanity, especially as it applies to the insanity tolling provision of MCL 600.5851. However, Plaintiff believes the fact that he was once adjudged insane in a criminal matter is relevant as it relates to generally held beliefs and misconceptions about the concept of insanity.

Plaintiff was found to be insane in a 1997 case of malicious destruction of property. He had driven his car–slowly so as not to hurt anyone–through the front window of a motorcycle showroom, exited the vehicle, and destroyed property in the showroom with a baseball bat. The attack was not random, but was inspired by a co-owner of the business's efforts to use Plaintiff's friend's mental illness against her in his strategy to seize most of her property. It had worked. In response, Plaintiff had visited a local cemetery, prayed, and heard the "voice of God" tell him to execute a plan to get back at this individual. Plaintiff was found to be Not Guilty by Reason of Insanity for this crime.

Many hold the belief that a person who is insane cannot act rationally, that an insane person cannot make a plan, much less carry one out. There is widespread belief that someone who is experiencing insanity cannot function in a normal way, or be a functional member of society. These are not learned concepts about people who are judged to be "insane." The well-known example of an insane individual is John Hinckley Jr., who carried out a horrible shooting attack on a sitting president. No one could seriously argue that Hinckley could have taken the steps necessary to plan for and carry out his attack if he were not able to function in society. Yet, we seem to cling to the notion that in order to be considered "insane" one must also not be capable of behaving "normally," or not being able to "normally" function in society.

### III. SPECIFICS OF THIS MATTER

Defense has referenced a lot of case law in its Motion. Instead of trying to argue every point, Plaintiff will do his best to point out the specifics of his own condition, from the time in question, as it relates to this matter. Plaintiff leaves it to the Court to determine to what degree, or if the Defense's referenced cases are relevant here.

An often quoted interpretation of the insanity tolling statute is:

> A person "need not be a blithering idiot in order to raise the defense of mental derangement under this statutory provision.

Plaintiff has never considered himself a blithering idiot even during his worst moments. However, to be fair, it may have appeared to onlookers as if he was a blithering idiot, in those moments, Plaintiff was dealing with mental delusion strong enough to make him appear that way. Plaintiff contends that from the September 4, 2014 date of the incident to the summer of 2017, although his condition improved to a level of functioning that allowed such normal activities as working, traveling and tending to other legal matters—as Defense Counsel points out—he was not at a level of functioning sufficient to understand the level of wrong that had been inflicted on him by defendant officers, or to do anything about it.

Plaintiff was, in fact, traumatized by the actions of the defendant police officers. Saying things like: He returned to work subsequently, he attended to other legal matters, he travelled ("without a driver's license", Plaintiff would like to remind Defense Counsel that travel between Canada and the US is an option via Greyhound bus); this ignores the specific nature of the offense committed against him, and its specific consequence on the mental health of the Plaintiff.

3

As an analogy, a victim of a bank robbery, who becomes traumatized as a result of the robbery, and 6 months after the robbery, a return to normal functioning by him might be expected. This person may be expected to return to work, to tend normally to his affairs, even to visit a bank to conduct his financial affairs. But, what if upon entering the bank, he notices that the bank robbers are now employed there as security guards? Should he be expected to conduct his business in THIS bank? Plaintiff is put under a similar burden in this matter. Although he was able to return to work after the incident, travel, and conduct himself in certain legal matters, this does not mean he was not specifically affected by this traumatic event in question and should be expected to normally regard and attend to THAT specific legal matter. In fact, Plaintiff contends his specific trauma in this matter affected his ability to comprehend it properly, and affected his ability to act on it until he was first able to investigate the matter in the summer of 2017.

Defendants' actions caused Plaintiff severe emotional distress and PTSD. Within 24 hours after the Taser incident at Hillsdale Hospital, Plaintiff was transferred to StoneCrest Center in Detroit, a mental health treatment facility. Despite having fresh marks on his chest from having a Taser device repeatedly used on him, Plaintiff made no mention of the incident to StoneCrest Center staff. This would have been the ideal time to seek help from the staff there, as it may have led to Hillsdale Hospital holding onto surveillance footage of the incident instead of recording over it in 2 weeks' time as is their normal practice.

Even months after discharge from StoneCrest Center, after Plaintiff was deemed well enough for release by hospital staff, when Plaintiff relayed some of the details of what had happened to his mother, who was formerly a nurse at Hillsdale Hospital, Plaintiff was afraid to even visit the hospital to try to get information about what had happened from them. He feared,

4

irrationally, that he would likely be hospitalized or arrested if he approached anyone at Hillsdale Hospital regarding this matter.

## IV. CONCLUSION AND REQUEST FOR RELIEF

Defense argues Plaintiff's state and federal claims are barred by Michigan's statutes of limitation. Defense contends Michigan's insanity tolling statute, MCL 600.5851 does not apply because plaintiff regained his sanity well before May 29, 2017, one year before he filed suit. Plaintiff contends his diminished state of mind (insanity) continued until the summer of 2017, and he was not able to commence an investigation into this matter until that time. Therefore, Plaintiff contends that Michigan's insanity tolling statute, MCL 600.5851 does in fact apply, because Plaintiff filed his initial complaint within one year of the time he had returned to a sound enough state of mind to commence an investigation into the matter and file the complaint.

Plaintiff ask this Court to deny the defense Motion to Dismiss and/or for Summary Judgement, and allow the case to proceed.

Respectfully Submitted,

JOSEPH BRUNEAU
pro se

BY: _Joseph Bruneau_
Self-represented Plaintiff
5020 Carson Ave. SW
Grand Rapids, MI 49548
(616) 238-8558

Dated: April 27, 2019

5

From: JOSEPH
5020 CARSON AVE SW
GRAND RAPIDS, MI 49548

Metroplex MI 480 ZIP
TUE 30 APR 2019 AM

To: U.S. DISTRICT COURT WESTERN DIST. S. DIV.
399 FEDERAL BUILDING
110 MICHIGAN ST. NW
GRAND RAPIDS MI 49503

ReadyPost
Document Mailer